```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ANAYANICOLE KARNLEY JARBIE,              :   15 Civ. 2565 (GBD) (JCF)
                                         :
              Plaintiff,                  :       REPORT AND
                                         :      RECOMMENDATION
      - against -                         :
                                         :
OFFICE OF ATTORNEY GENERAL ERIC H.        :
HOLDER, U.S. DEPARTMENT OF STATE          :
JOHN F. KERRY, U.S. DEPARTMENT OF         :
STATE NATIONAL PASSPORT CENTER,           :
U.S. SENATE KRISTEN GILLIBRAND, and       :
CONGRESSMAN JOSE E. SERRANO,              :
                                         :
              Defendants.                 :
- - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

Pro se plaintiff Anayanicole Karnley Jarbie brings this action challenging the United States Department of State's denial of her passport application. The defendant[1] has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that the defendant's motion be granted.

---

[1] On August 11, 2015, the Court dismissed sua sponte the plaintiff's claims against former Attorney General Eric H. Holder, Senator Kristen Gillibrand, and Congressman Jose E. Serrano. (Order dated Aug. 11, 2015). For convenience's sake, I will refer to the remaining defendants -- that is, Secretary of State John F. Kerry and the Department of State National Passport Center -- collectively as either "the State Department" or "the defendant."

1

Background[2]

Ms. Karnley Jarbie submitted her passport application at a post office in the Bronx, New York, on July 20, 2013. (R. at 65). In her application, she indicated that she was born in the Bronx on January 7, 1981, to Linda Grant and Cyrus Powell and that she had never before applied for or been issued a passport. (R. at 1-2). She attached to her application (1) a birth certificate; (2) a New York driver's license; (3) an order from the Civil Court of the City of New York granting her leave to change her name from Nicole Savashia Powell to Anayanicole Haji Halematu Karnley-Jarbie; and (4) a record showing that notice of her name change was published in the Irish Echo newspaper. (R. at 3-11).

The State Department wrote to Ms. Karnley Jarbie on July 30, 2013, acknowledging receipt of her application but indicating that, because "[its] records indicate[d] that [she] previously applied for a passport on March 24, 2000," "additional documentation [was] needed to further establish [her] identity." (R. at 13). Specifically, the defendant requested a written summary of the plaintiff's current and past residences; the schools

---

[2] The following recitation of facts is derived from the "un-redacted record" that the defendant filed under seal with the court pursuant to my Order of July 5, 2016. (Order dated July 5, 2016). Citations to "R." refer to that record. As I explain below, "un-redacted record" is something of a misnomer, as many documents remain substantially redacted.

she attended; her employment history; and the names, dates of birth, and places of birth of her family members. (R. at 13). In addition, the defendant asked the plaintiff to "submit a combination of personal documents" from the period between her birth and 1998 and which "include identification containing your name/photo with issue date or your name/signature with issue date," as well as "any documents that show your name[,] date[,] and place of birth." (R. at 13). Finally, the letter stated that, pursuant to 22 C.F.R. § 51.60(a)(2), the plaintiff was ineligible to receive a passport due to a certification from the Secretary of Health and Human Services that she was "in arrears of child support." (R. at 14).

The plaintiff's response, dated September 3, 2013, provided a list of her residences from 1998 onward, the name and address of the community college she was then attending, and the name of her current employer with a notation that she had "only been working at one job" since 2012. (R. at 15). She further stated that she had no siblings, was not married, and "[did] not have any information about [her] birth parents." (R. at 15). As for supporting documents, Ms. Karnley Jarbie attached what she indicated were "all documents that [were] require[d] for me to send in." (R. at 16).

The first attachment is an immunization record maintained by

3

the New York City Department of Health; the earliest documented
immunization occurred in 2002, and the plaintiff's date of birth
is listed as January 7, 1980.  (R. at 17-18).  Next is a letter
indicating that "Nicole Powell D.O.B. 01/08/1980 attended Evander
Childs High School" until 2002 and that, because the school closed
in 2008, no additional information is available.  (R. at 21).
However, Ms. Karnley Jarbie also attached an "Admission And
Discharge History" record for Nicole Powell (date of birth January
7, 1980) from the New York City Public Schools showing continuous
admission from 1986 through 2002 with the exception of one gap
from 1989 through 1994.  (R. at 23-25).  The next set of
attachments includes the birth certificate for Ms. Karnley
Jarbie's son, born in February 1999 in the Bronx, a New York
learner's permit issued in 2005 to Nicole Powell (date of birth
January 7, 1981), an employee ID issued in 2012, an undated student
ID, and a social security card issued in 2012.  (R. at 26).  The
following document is a voter registration approval notice from
2012 from the New York City Board of Elections to "Jarbie HH
Karnley Jarbie."  (R. at 27-28).  Although Ms. Karnley Jarbie's
letter also refers to a health insurance card, no such document is
included in the record.  (R. at 16).

On September 27, 2013, Ms. Karnley Jarbie sent the defendant
another letter explaining that her aunt and uncle raised her from

4

birth "until [she] became a young adult" and that she had no memory of her parents, who "passed many years ago." (R. at 29). "[T]o prove [her] citizenship," she also enclosed documents purporting to show that she "had appl[ied] for goverment [sic] assistance from the year of 1998 to presently." (R. at 30). Although nearly all of the attached documents are unreadable, they do appear to demonstrate that Ms. Karnley Jarbie (date of birth January 7, 1980) began receiving public assistance in 1998. (R. at 31, 35). Attached to the plaintiff's complaint are another three letters addressed to the defendant (which do not appear in the administrative record) inquiring as to the status of her application and demanding return of the fee she paid to have her application expedited. (Complaint at 18-21).[3]

In October 2013, the State Department's Diplomatic Security Services, suspecting passport fraud in connection with the plaintiff's application, opened a criminal investigation. (R. at 49). Ms. Karnley Jarbie's application was first forwarded to the National Passport Center's Fraud Prevention Manager when it was determined that she was "the same individual who applied on [a] prior application and was a suspect imposter." (R. at 50). On

---

[3] Citations to the complaint use the page numbers assigned by the court's Case Management/Electronic Case Filing system.

October 29, 2013, the case was assigned to Special Agent John D. Ramos. (R. at 50).

According to the investigation report, Special Agent Ramos verified the validity of the plaintiff's birth certificate, driver's license, and Social Security number. (R. at 50-51). He then contacted the plaintiff on November 26, 2013, "in order to schedule a meeting to clarify information" from her application; on December 17, 2013, Special Agents Ramos and Bleu Lawless interviewed her at the U.S. Passport Office in Manhattan. (R. at 51). At the interview, the plaintiff produced Social Security cards of her two children and completed a handwriting sample that "was a match" with her passport application. (R. at 51). The plaintiff exhibited "an intimate familiarity with her alleged past and answered all questions without hesitation." (R. at 51). She indicated that she had plans to visit family of her husband,[4] Junior Jean Baptiste, in Haiti, and stated that she did not submit a passport application in March 2000 and had no knowledge of "how her information was obtained."[5] (R. at 51). At the conclusion of

---

[4] In both her passport application and her September 3, 2013, response to the defendant's request for additional information, the plaintiff stated that she was not married. (R. at 2, 15).

[5] A copy of the March 2000 application and its attachments is included in the administrative record. The applicant is identified as "Nicole Shavasha Powell," born in the Bronx on January 7, 1981, to Cyrus and Linda Powell. (R. at 66). The

the interview, Ms. Karnley Jarbie agreed to be fingerprinted.  (R. at 52).  The Federal Bureau of Investigation analyzed the prints and "confirmed [them] as belonging to . . . Anayanicole Haji Halem Karnley-Jarbie, DOB: 01/07/1981."  (R. at 52).  Special Agent Ramos concluded that his findings, including the fact that the plaintiff's handwriting sample did not match the handwriting from the March 2000 application, mitigated the "fraud indications" in the plaintiff's application.  (R. at 51-52).  He further concluded that "[b]ased upon the facts presented, [the plaintiff] appears to be the true ID," and the investigation was closed on March 21, 2014, with a finding of "no fraud detected."  (R. at 49).

However, for reasons that cannot be discerned from the redacted records, the investigation was re-opened and the case reassigned, first to Special Agent Lawless and then to Special Agent Jeremy Weinstein.  (R. at 53, 56, 60).  Through an attorney

---

birth certificate and New York ID card submitted with the March 2000 application bear the same identification numbers as the birth certificate and New York driver's license submitted with the plaintiff's 2013 application.  (R. at 3-4, 67-68).  The application also included a Social Security card for Nicole Savashia Powell bearing the same Social Security number as the card the plaintiff provided in response to the State Department's request for further identification documents.  (R. at 26, 68).  An individual from Ghana named Daniel O. Martey provided an "Affidavit of Identifying Witness" in connection with the March 2000 application in which he claimed to have known Nicole Powell for nine years and affirmed that she was a citizen or national of the United States.  (R. at 69).

the plaintiff hired, another interview was arranged for October 9, 2014. (R. at 61). The plaintiff was asked at the interview why many of the documents she submitted showed January 7, 1980, as her date of birth rather than January 7, 1981, but "could not offer any explanation for the discrepancy." (R. at 61). Again, the plaintiff denied having filed a passport application in 2000 and stated that she was unaware of the application's existence. (R. at 61). And though she confirmed that the photograph affixed to that application appeared to be a photograph of her, she denied that the signature was hers and "attempted to point out additional discrepancies in the document." (R. at 61).

The investigation report further notes that the plaintiff told investigators that she lived with her aunt, "Constance Karney-Jarbie [sic]," a fact she did not mention "as part of her time line" during the October 9, 2014 interview. (R. at 61). The report also references a statement made by the plaintiff's "relative, Sanasi Jarbie," that Ms. Karnley Jarbie "was from Liberia and that she entered in 2003," and a statement made by Constance Karnley-Jarbie that, "based on [the plaintiff's] accent, she was from Nigeria or another French-speaking or West African country."[6] (R. at 54). According to the report, the plaintiff

_____

[6] The administrative record includes a passport application for Sanasi Arphan Jarbie which indicates that he was born in

8

"could not explain" these statements.  (R. at 54).  Citing
"unanswered questions surrounding the [plaintiff], [the
plaintiff's] inability to provide original documentation prior to
2003, the 2000 fraudulent [] application, and the statements of
the [plaintiff's] relatives," the report found "this case to be
inconclusive as to the identity of the [plaintiff]," and the
investigation was again closed.  (R. at 54).

By letter dated April 6, 2015, the State Department denied
Ms. Karnley Jarbie's application on the ground that "[t]he evidence
received [was] not sufficient to establish [her] identity."  (R.
at 65).  Presumably by coincidence, Ms. Karnley Jarbie had
initiated this suit only a few days earlier.

Legal Standard

    A.   The Administrative Procedure Act

The Administrative Procedure Act (the "APA") provides that
"[a] person suffering legal wrong because of agency action . . .
is entitled to judicial review thereof."[7]  5 U.S.C. § 702.  Under

---

Zwedru, Liberia, and was married to Constance K. Jarbie on November
15, 1992. (R. at 79-80).

    [7] Although the plaintiff does not identify any statute or
other authority that gives her a cause of action, her complaint
can be construed as an action under the APA.  In fact, the
defendant concedes that its decision regarding the plaintiff's
passport application is subject to judicial review pursuant to 5
U.S.C. § 702.  (Memorandum of Law in Support of Defendants' Motion
for Summary Judgment ("Def. Memo.") at 1).

the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be [] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); see also County of Westchester v. United States Department of Housing and Urban Development, 116 F. Supp. 3d 251, 277 (S.D.N.Y. 2015).

> Agency action is arbitrary and capricious when
>
> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Manufacturers Association of the United States, Inc.

---

Pursuant to 8 U.S.C. § 1503(a), an individual may seek "a judgment declaring him to be a national of the United States" if he has been denied a right or privilege as a national "upon the ground that he is not a national of the United States."  See, e.g., Lopez v. U.S. Department of State ex rel. Clinton, No. 3:11-CV-1069, 2013 WL 121804, at *7 (D. Or. Jan. 9, 2013); De La Cruz v. Clinton, No. A-11-CV-675, 2012 WL 1941373, at *2 (W.D. Tex. May 29, 2012); Nelson v. Clinton, No. H-10-58, 2010 WL 5342822, at *1, 3-4 (S.D. Tex. Dec. 21, 2010).  I agree with the defendant that the plaintiff has no claim under § 1503 because her application was denied not "upon the ground that [she] is not a national of the United States," 8 U.S.C. § 1503(a), but rather on the ground that she failed to establish her identity, which are distinct requirements under the regulations, 22 C.F.R. §§ 51.23(a), 51.40. (Def. Memo. at 12-13); but see Chin Chuck Ming v. Dulles, 225 F.2d 849, 853 (9th Cir. 1955) (rejecting same argument because "[r]efusal for lack of identity of the applicant necessarily is on the ground that he is not the person claiming to be 'a national of the United States'").

v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43 (1983).   "Although [the reviewing court] may 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned,' '[it] may not supply a reasoned basis for the agency's action that the agency itself has not given.'"   Natural Resources Defense Council v. EPA, 658 F.3d 200, 215 (2d Cir. 2011) (quoting State Farm, 463 U.S. at 43).   And while this deferential standard prohibits the reviewing court from substituting its judgment for that of the agency, Natural Resources Defense Council, Inc. v. FAA, 564 F.3d 549, 555 (2d Cir. 2009), "the court's inquiry must be 'searching and careful,'" Natural Audubon Society v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997) (quoting Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989)).[8]

---

[8] The defendant asserts that, in addition to determining whether the agency's action was arbitrary and capricious, "the Court must also review the record as a whole to determine whether the State Department's decision was based on 'substantial evidence.'"   (Def. Memo. at 10 (quoting Brink's, Inc. v. Herman, 148 F.3d 175, 178-79 (2d Cir. 1998)).   That is not quite right. The APA's "substantial evidence" standard applies only "in a case subject to sections 556 and 557 of [the APA] or otherwise reviewed on the record of an agency hearing provided by statute."   5 U.S.C. § 706(2)(E).   But no matter; as the Court of Appeals for the District of Columbia has explained, "there is no substantive difference between what [the arbitrary and capricious standard] requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense."   Association of Data Processing Service Organizations, Inc. v. Board of Governors of the Federal Reserve System, 745 F.2d 677, 683-84 (D.C. Cir. 1984).

B.  Underline{Summary Judgment}

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).[9] When a party seeks judicial review of agency action, summary judgment is appropriate, Residents for Sane Trash Solutions, Inc. v. U.S. Army Corps of Engineers, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014), though the court's task is somewhat different than in the typical case, see University Medical Center of Southern Nevada v. Shalala, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999) (noting that district court reviewing agency action "sits as an appellate tribunal" and that "the question of whether [the agency] acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record").

──────────────

[9] Local Civil Rule 56.1 requires a party moving for summary judgment to attach to its motion a concise statement of undisputed material facts.  Local Civ. R. 56.1(a).  This requirement, however, is generally waived when summary judgment is requested on the basis of an administrative record.  See Just Bagels Manufacturing, Inc. v. Mayorkas, 900 F. Supp. 2d 363, 372 n.7 (S.D.N.Y. 2012) (collecting cases).  Accordingly, the defendant did not (and need not) file a Rule 56.1 statement.  Pursuant to Local Civil Rule 56.2, the defendant did provide the plaintiff with the required "Notice to a Pro Se Litigant Who Opposes a Motion For Summary Judgment."  (Declaration of Shane Cargo dated June 30, 2016, ¶ 2).

12

The existence of disputed facts in the administrative record is not the reviewing court's primary concern.  Instead it must assess whether, in light of "facts [] before the agency at the time it acted," that is, the facts contained in the administrative record, Dopico v. Goldschmidt, 687 F.2d 644, 654 (2d Cir. 1982), the agency acted in violation of the APA.  See Natural Resources Defense Council, Inc. v. Muszynski, 268 F.3d 91, 97 (2d Cir. 2001); County of Weschester, 116 F. Supp. 3d at 275.  Put differently, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Occidental Engineering Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985).

C.   Statutory and Regulatory Framework

The Secretary of State and State Department employees are empowered by statute to grant and issue passports.  22 U.S.C. § 211a.

> Before a passport is issued to any person . . . such person shall subscribe to and submit a written application which shall contain a true recital of each and every matter of fact which may be required by law or by any rules authorized by law to be stated as a prerequisite to the issuance of any such passport.

22 U.S.C. § 213.  The regulations governing the issuance of passports are set out at 22 C.F.R., Part 51.

Pursuant to 22 C.F.R. § 51.23(b), a passport applicant bears

the burden of establishing her identity "by the submission of a previous passport, other state, local, or federal government officially issued identification with photograph, or other identifying evidence which may include an affidavit of an identifying witness."[10]  However, "[t]he [State] Department may require such additional evidence of identity as it deems necessary."  22 C.F.R. § 51.23(c).  The application "will be denied" if the applicant fails to satisfy her burden of proof under § 51.23 or fails to "provide documentation sufficient to establish entitlement to passport issuance within ninety days of notification by the [State] Department that additional information from the applicant is required."  22 C.F.R. § 51.65(b).  When the State Department denies an application, it is required to provide notice to the applicant "set[ting] forth the specific reasons for

---

[10] Neither the relevant statute nor the regulations state how high a burden of proof the applicant must satisfy to establish her identity.  "It is well settled that where Congress has failed to establish the degree of proof required in an administrative proceeding, the judiciary is the traditional, and the most appropriate, forum to prescribe the standard."  Bender v. Clark, 744 F.2d 1424, 1429 (10th Cir. 1984) (citing Herman & MacLean v. Huddleston, 459 U.S. 375 (1983); Steadman v. SEC, 450 U.S. 91, 95 (1981); and Woodby v. INS, 385 U.S. 276, 284 (1966)).  Absent extraordinary circumstances, "[t]he traditional standard required in a[n] . . . administrative proceeding is proof by a preponderance of the evidence."  Id.  I find the State Department's view that a preponderance of the evidence standard is appropriate in these circumstances to be reasonable.  See 7 U.S. Department of State Foreign Affairs Manual § 1313(b).

the denial." 22 C.F.R. § 51.65(a). Following such a denial, "an applicant wish[ing] to pursue a claim of entitlement to passport issuance" must submit a new application. 22 C.F.R. § 51.65(b). Although applicants who are denied a passport on certain grounds may request a hearing to review that decision, an applicant who fails to establish her identity cannot request such a hearing. See 22 C.F.R. § 51.70(a)-(b).

Discussion

At the outset, I find it necessary to discuss briefly the record in this case. Ordered to provide the Court with an un-redacted version of the record the agency considered in adjudicating the plaintiff's application, the defendant provided a copy that was still redacted (though less so than the version it originally submitted). The defendant represents that the remaining redactions existed in the record its adjudicator relied on in reaching its decision. (Declaration of Regina Ballard dated Aug. 2, 2016, ¶¶ 3-4). Pursuant to the so-called "administrative record rule," a court reviewing agency action under the APA must apply the appropriate standard of review to "the agency decision based on the record the agency presents to the reviewing court." Tummino v. Hamburg, 936 F. Supp. 2d 162, 195 (E.D.N.Y. 2013) (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)). Based on the State Department's representations, the

still-redacted information constitutes "extra-record evidence," which the Court may consider "only where 'there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice.'" Comprehensive Community Development Corp. v. Sebelius, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) (quoting National Audubon Society, 132 F.3d at 14). Because the plaintiff has not argued that the defendant compiled the administrative record improperly or in bad faith, and because I find the reasons for the agency's choice to be clear enough in the present record, there is no need to compel further disclosure.

"[A] decision of less than ideal clarity" is an apt description of the State Department's resolution of Ms. Karnley Jarbie's passport application, and although "the [defendant's] path [to its decision] may reasonably be discerned," Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286 (1974), it is neither a straightforward nor a satisfying task. However, the scraps of suspicion concerning the plaintiff's identity contained in the frustratingly muddled record cast sufficient doubt on the plaintiff's application to support the outcome. Ultimately, Ms. Karnley Jarbie bore the burden of

16

establishing her identity, and the conclusion that she failed do so, though far from unavoidable, is not arbitrary or capricious.

First, there's the issue of the March 2000 passport application. It merits emphasizing that that application was accompanied by the plaintiff's birth certificate, her social security card, her New York state identification card, a sworn witness affidavit stating the applicant was who she said she was, and her photograph. In the face of these facts and in the absence of any explanation as to how her documents came to be in an imposter's possession, the plaintiff's position -- that "she did not submit [the application]" and "was unaware that the document existed" (R. at 61) -- is suspect. The plaintiff's inability to distance herself convincingly from the March 2000 application, which was itself flagged because the applicant was "a suspect imposter," undermines the value of the documentation she submitted in support of her application. However, it should not be ignored that, at the conclusion of the first fraud investigation, Special Agent Ramos apparently accepted the plaintiff's representations concerning the March 2000 application and concluded that the plaintiff "appear[ed] to be the true ID." (R. at 51-52).

Although their statements are themselves suspicious, the representations that the plaintiff's relatives made to State Department investigators cast further doubt on her application.

17

For one, because the investigation report is heavily redacted, there is no information about the circumstances in which these statements were made. Second, the statement made by the plaintiff's aunt -- "that based on [the plaintiff's] accent she was from Nigeria or another French-speaking or West African country" (R. at 54) -- is bizarre; Nigeria is not a French-speaking country, see The World Factbook: Nigeria, Central Intelligence Agency, https://www.cia.gov/library/publications/the-world-factbook/geos/ni.html (last updated July 13, 2016), and one would expect the plaintiff's aunt to base her knowledge concerning her niece's country of origin on something other than the plaintiff's accent. As for Mr. Jarbie's statement -- "that the [plaintiff] [is] from Liberia and that she entered in 2003" (R. at 54) -- the plaintiff's school records (R. at 21-25), public benefits documents (R. at 33), and the passport application that she is believed to have filed in 2000, raise doubts concerning the statement's accuracy. However, when confronted with her relatives' statements, the plaintiff offered no explanation. (R. at 54). Given the plaintiff's representations about her background, namely that she was born in the Bronx to parents born in New York and North Carolina, her failure to respond to such strikingly divergent claims further erodes her credibility.

Discrepancies in the documents the plaintiff submitted as to

her date of birth, while not especially troublesome in isolation, provide further support for the State Department's decision.   As the defendant points out (Def. Memo. at 15), the inconsistencies are many.   (Compare R. at 1, 3 (Jan. 7, 1981), with R. at 11, 18, 22, 31 (Jan. 7, 1980), and R. at 21 (Jan. 8, 1980)).   And while one might attribute a single discrepancy to bureaucratic sloppiness,[11] the accumulation of errors in the context of the entire record and, again, the plaintiff's failure to offer any explanation (R. at 61), minimize the value of the plaintiff's submissions.

The plaintiff's response to the State Department's request for further documentation, a request it is entitled by regulation to make "as it deems necessary," 22 C.F.R. § 51.23, was significantly deficient.   Asked to provide a list of current and past residences, the plaintiff provided addresses that only went back to 1998. (R. at 13, 15).   Similarly, the plaintiff's list of schools she "attended or [was] currently attending" included only the institution she was attending at that time.   (R. at 13, 15). Asked to provide documents from the period between when she was born and 1998 containing both her name and either her photograph

---

[11]   Indeed, the individual who prepared the second investigation report mistakenly wrote "10/07/1980" rather than "01/07/1980."   (R. at 61).

or signature, the plaintiff failed to provide a single responsive document. (R. at 13, 17-48).

In opposing the defendant's motion, the plaintiff failed to reveal any basis to deem arbitrary or capricious the State Department's action. To be sure, looking only at the evidence she submitted (and overlooking the inconsistent dates of birth contained therein), a reviewing court would be hard-pressed to uphold the State Department's decision. However, the Court must consider the entire record, and that record contains sufficient evidence to discredit the plaintiff's submissions and justify the defendant's decision. The arguments the plaintiff raises concerning the March 2000 application are not persuasive, and her pledges of honesty are beside the point, as it is not the Court's role to consider her application for a passport de novo. Cf. Nelson, 2010 WL 5342822, at *3.

A reasonable person could look at this record and conclude that the plaintiff is more likely than not the person she says she is. However, taken together, the factors outlined above could lead another reasonable person to conclude that the plaintiff did not establish her identity by a preponderance of the evidence. After a careful and searching review of the entire record, I find that the State Department's decision does not suffer from any infirmity that would render the agency's action arbitrary or

20

capricious.

Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable George B. Daniels, Room 1310, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         August 12, 2016

Copies mailed this date to:

Anayanicole Karnley Jarbie
2537 Decatur Ave.
Apt. 4
Bronx, NY 10458

Shane P. Cargo, Esq.
Assistant U.S. Attorney
86 Chambers St., 3rd Floor
New York, NY 10007